```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**TARA L. KLINGMAN,**

        **Plaintiff,**
   vs.                                      Civil Action 2:14-cv-1125
                                                    Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

<u>OPINION AND ORDER</u>

**I.   Background**

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the Court, with the consent of the parties pursuant to 28 U.S.C. § 636(c), for consideration of *Plaintiff Tara L. Klingman's Statement of Errors* ("*Statement of Errors*"), Doc. No. 16, and *Defendant's Memorandum in Opposition*, Doc. No. 20.

Plaintiff Tara L. Klingman filed her applications for benefits on August 19, 2011, alleging that she has been disabled since July 14, 2011. *PAGEID* 86, 270-81. The claims were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

An administrative hearing was held on February 1, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Robin Cook, who testified as a vocational expert. *PAGEID* 103. In a decision dated April 23, 2013, the administrative law judge concluded

that plaintiff was not disabled from July 14, 2011, through the date of the administrative decision. *PAGEID* 86-96. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 16, 2014. *PAGEID* 50-53.

Plaintiff was 36 years of age on the date of the administrative decision. *See PAGEID* 96, 270. Plaintiff is insured for disability insurance purposes through December 31, 2016. *PAGEID* 88. Plaintiff has at least a high school education, is able to communicate in English, and has past relevant work as a scheduler. *PAGEID* 94. She has not engaged in substantial gainful activity since July 14, 2011, the alleged date of onset of disability. *PAGEID* 88.

## II.  Administrative Decision

The administrative law judge found that plaintiff's severe impairments consist of degenerative joint disease of the right knee status-post surgery, a history of degenerative joint disease of the left knee status-post remote surgery, degenerative disc disease, obesity, sacroiliitis, asthma, nocturnal hypoxemia, and seizure disorder. *PAGEID* 88. The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

> perform a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically the claimant is able to lift up to ten pounds. She is able to stand/walk for about two hours and sit for up to six hours in an eight-hour workday, with normal breaks. She is unable to climb ladders/ropes/scaffolds, but is occasionally able to climb ramps/stairs, kneel, crouch, and crawl, and frequently able to balance and stoop. The claimant should avoid concentrated exposure to fumes, odors, dusts, gases, poorly ventilated areas, and chemicals. She should avoid

2

all exposure to unprotected heights and use of moving machinery. *PAGEID* 90. Relying on the testimony of the vocational expert, the administrative law judge found that this RFC does not preclude the performance of plaintiff's past relevant work as a scheduler. *PAGEID* 94. The administrative law judge also relied on the testimony of the vocational expert to find, alternatively, that plaintiff is able to perform a significant number of jobs in the national economy, including such representative jobs as semi-conductor bonder, charge account clerk, and document preparer-microfilm. *PAGEID* 94-95. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from July 14, 2011, through the date of the administrative decision. *PAGEID* 95.

**III. Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of*

3

*Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

In her *Statement of Errors*, plaintiff first challenges the administrative law judge's credibility determination. Plaintiff specifically argues that the administrative law judge erred in finding that plaintiff was not credible as to her seizure disorder. *Statement of Errors*, pp. 6-9.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to

4

produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge summarized plaintiff's subjective complaints and her testimony at the administrative hearing, but found that plaintiff's statements were "not entirely credible." PAGEID 91-93. With regard to plaintiff's seizure disorder, the administrative law judge found as follows:

> She stated that while her full seizures are shorter now with medication, they still last three to seven minutes and cause confusion, left arm numbness, poor vision, and an inability to speak. She testified that her partial seizures occur less than her full seizures and cause blurred vision, slurred speech, and occasional left arm numbness, but that she retains awareness during the episodes.
> . . .

5

> Regarding her seizure disorder, the claimant reported she was diagnosed with epilepsy at age 17, but that she went off seizure medication around 2009, when her condition had been asymptomatic, and a 2009 electroencephalogram was normal. [19F, 13F]  In December 2011, she reported she had no seizures for the past six months. [11F]  In June 2012, the claimant sought treatment from Robert T. Woodruff, M.D., stating she had three seizure spells since January 2012. [19F]  Dr. Woodruff diagnosed the claimant with intractable simple partial epilepsy and prescribed her increased Keppra. [19F]  At a follow-up appointment in September 2012, the claimant stated she had been seizure-free since May 2012, and that the increased Keppra dosage prescribed caused no side effects. [20F]
>
> . . .
>
> The claimant's allegations are not fully credible. . . . Regarding her seizure disorder, it appears from her seizure logs, treatment notes, and hearing testimony, that she has had, at most, one seizure a month between February and December 2012, and that she was seizure-free for several months in 2012, including July, August, and September. [13E, 18E, 11F, 20F, Hearing Testimony]  In addition, the claimant testified she has never been unable to drive due to seizures, which indicates the condition is not that severe. [20F, Hearing Testimony]  Although she testified that Keppra makes her tired, she told her doctor she had no side effects, and she also testified that her medication helps the frequency and severity of her seizures. [20F, Hearing Testimony]  The undersigned notes the claimant was somewhat evasive regarding the frequency of her seizures at the hearing, but ultimately admitted she did not have even monthly seizures throughout 2012.

*PAGEID* 91-93.

Plaintiff "does not contest the summary of evidence the ALJ undertakes." *Statement of Errors*, p. 7.  Instead, plaintiff argues that the administrative law judge erred in discounting plaintiff's credibility regarding her seizures because her seizure logs and testimony demonstrate "that even with appropriate medication Ms. Klingman was having seizures with a frequency that would preclude work

6

activity." *Id*. Plaintiff argues that, according to the vocational expert, having one seizure a month would be work preclusive. *Id*. at p. 8. Plaintiff also challenges the administrative law judge's characterization that plaintiff was evasive during the administrative hearing, and she argues that her ability to drive is not inconsistent with her allegations. *Id*. According to plaintiff, her reported symptoms of "blurred vision, left arm numbness, confusion, and then fatigue . . . are severe and debilitating at the time and after the seizure, but are not necessarily inconsistent with the ability to drive." *Id*. Plaintiff's arguments are not well taken.

The administrative law judge noted and followed the appropriate standards, performed an appropriate evaluation of the evidence, and clearly articulated the bases of his credibility determination. Although the administrative law judge provided numerous reasons for discounting plaintiff's credibility, *see PAGEID* 91-93, plaintiff challenges only the administrative law judge's evaluation of plaintiff's complaints regarding her seizure disorder. However, the administrative law judge expressly considered plaintiff's reports and testimony related to her seizures and found that plaintiff's allegations were not fully credible. *PAGEID* 91-93. The administrative law judge noted that plaintiff was "somewhat evasive regarding the frequency of her seizures at the hearing, but ultimately admitted she did not have even monthly seizures throughout 2012." *PAGEID* 93. Plaintiff challenges this determination. *Statement of Errors*, p. 8. However, it was the administrative law judge, not this

7

Court, who had a "unique opportunity to observe the claimant and judge her subjective complaints." *Buxton*, 246 F.3d at 773 (citing *Kirk*, 667 F.2d at 538). It is also notable that, in response to questions from her counsel, plaintiff testified that she has "at least . . . one [full seizure] usually a month, sometimes two or three," *PAGEID* 121, yet plaintiff testified in response to questions from the administrative law judge that she does not always have seizures every month. *PAGEID* 132. The administrative law judge also found that plaintiff's "condition is not that severe" because she "has never been unable to drive due to seizures." *Id*. Plaintiff's arguments to the contrary notwithstanding, it was not unreasonable for the administrative law judge to discount plaintiff's subjective complaints related to her seizures on the basis that she "has never been unable to drive due to the seizures." Notably, plaintiff reported that her seizures occur without warning and cause "debilitating" symptoms, *Statement of Errors*, p. 8, of blurred vision, slurred speech, dizziness, and arm numbness. *PAGEID* 356. Dr. Woodruff also noted in September 2012 that plaintiff would "be able to drive now" because it had "been 4 months since [her] last seizure." *PAGEID* 614.

In short, the analysis and credibility determination of the administrative law judge enjoy substantial support in the record. This Court will not – and indeed may not - revisit that credibility determination. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

Plaintiff next argues that the administrative law judge erred

8

in evaluating the opinion of Scott Lewis Donaldson, Ph.D. *Statement of Errors*, pp. 9-12. Plaintiff specifically argues that the administrative law judge erred in finding that Dr. Donaldson's examination notes did not suggest that plaintiff had serious mental limitations and in finding that Dr. Donaldson's opinion was based primarily on plaintiff's subjective complaints. *Id*.

Dr. Donaldson consultatively examined plaintiff on December 13, 2011. *PAGEID* 562-67. Dr. Donaldson assigned a global assessment of functioning score of 50 and diagnosed depressive disorder, NOS, and generalized anxiety disorder. *PAGEID* 566. According to Dr. Donaldson, plaintiff "may need assistance managing her day-to-day funds, as well as with additional long-range financial affairs." *Id*. However, plaintiff's "ability to understand, remember and carry out instructions may not be limited." *Id*. Dr. Donaldson also opined that plaintiff's ability to maintain attention and concentration and persistence and pace "to perform simple and multi-step tasks may be limited by excessive worry over somatic concerns and frustration that she is unable to relieve her medical symptoms. Additionally, she reported that her ability to focus and sustain attention has become problematic." *PAGEID* 567. With regard to plaintiff's abilities and limitations in responding appropriately to supervision and to coworkers in a work setting, Dr. Donaldson opined as follows: "The claimant reported that neither her inter-occupational nor her interpersonal relationships have presented functional obstacles. By contrast, due to restlessness/edginess, a limited frustration

9

tolerance and irritability, Ms. Klingman's ability to respond appropriately to supervisors and co-workers may be limited." *Id*. Dr. Donaldson further opined that, "[g]iven symptoms of depressive and anxiety disorders as well as psychological components of chronic pain, the claimant's ability to respond appropriately to work pressures in the work setting may be limited and consequently problematic." *Id*.

As a psychological consultative examiner, Dr. Donaldson is properly classified as a nontreating source. *See* 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").  With regard to nontreating sources, the agency will simply "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" the claimant.  20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).  In evaluating the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of [his] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in [his] specialty." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)).

The administrative law judge considered Dr. Donaldson's opinion, but assigned it "little weight" because Dr. Donaldson "provides no indication in his exam notes that the claimant has any serious mental limitations, and his opinion appears solely based on the claimant's

10

subjective complaints, not on any clinical signs or findings." *PAGEID* 93. Plaintiff argues that the administrative law judge's reasoning is not supported by substantial evidence. This Court disagrees.

First, Dr. Donaldson opined that plaintiff "may be limited" in several areas of functioning, but he did not specify the extent of any such limitations. *PAGEID* 567-68. Not only was Dr. Donaldson's opinion "admittedly vague," as plaintiff describes it, *Statement of Errors*, p. 10, his exam notes do not suggest that plaintiff has any serious mental limitations. Second, it is apparent from a review of Dr. Donaldson's opinion and report that he substantially relied on plaintiff's subjective complaints in forming his opinion. It is true, as plaintiff argues, that a psychological evaluation is often dependent on the subjective presentation of the patient. *See Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 821 (N.D. Ohio 2009). However, it is not improper for an administrative law judge to consider whether a medical opinion is dependent on the claimant's reports of symptoms and limitations, especially where, as here, the administrative law judge also finds that the claimant's subjective symptoms and reported limitations are not entirely credible. *See PAGEID* 91-93. The administrative law judge did not err in this regard.

Finally, plaintiff argues that the administrative law judge "erred by substituting his own lay opinion for that of a medical professional as the basis for plaintiff's residual functional capacity." *Statement of Errors*, p. 12 (emphasis omitted). Plaintiff

11

argues that the administrative law judge interpreted the medical data and used his "own lay interpretation of the record in formulating an RFC" because he assigned little weight to many of the medical opinions of record.  *Id*.  However, this is simply not a case in which the administrative law judge interpreted raw medical records without the assistance of medical opinions regarding a claimant's abilities.  *See Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908 (N.D. Ohio 2008). Rather, the administrative law judge was called upon to evaluate the various medical opinions and determine the weight to be assigned to each.  *See* 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004) (noting that the RFC determination is an administrative finding of fact reserved to the Commissioner).  The administrative law judge properly engaged in this process and his findings in this regard enjoy substantial support in the record.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the decision of the Commissioner is **AFFIRMED.**

This action is hereby **DISMISSED**.  The Clerk shall enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


April 30, 2015                                       *s/Norah McCann King*
                                                  Norah M<sup>c</sup>Cann King
                                             United States Magistrate Judge